**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 08-50537 |
| Plaintiff - Appellee, | D.C. No. 3:07-cr-02385-JAH-1 |
| v. | |
| ANTONIO LOPEZ-JACOBO, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Southern District of California
John A. Houston, District Judge, Presiding

Submitted November 6, 2009[**]
Pasadena, California

Before: GOULD and BEA, Circuit Judges, and HART, District Judge.[***]

Antonio Lopez-Jacobo ("Lopez") appeals the district court's denial of his

motion to dismiss his indictment under 8 U.S.C. § 1326 for illegal reentry into the

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***]     The Honorable William T. Hart, Senior District Judge for the Northern District of Illinois, sitting by designation.

United States by a deported alien. We have jurisdiction under 28 U.S.C. § 1291.

We review de novo the denial of a motion to dismiss an 8 U.S.C. § 1326

indictment when the motion to dismiss is based on an alleged due-process violation

in the underlying deportation proceeding. *United States v. Ubaldo-Figueroa*, 364

F.3d 1042, 1047 (9th Cir. 2004). We affirm.

Lopez moved to dismiss the indictment on the ground that his underlying

1997 deportation proceeding was constitutionally defective. The government

deported Lopez because he had been convicted of a crime involving the use of a

firearm. *See* 8 U.S.C. § 1227(a)(2)(C) (1997). Lopez argues that the government

deprived him of due process at the deportation proceeding because the Immigration

Judge (IJ) did not tell him that potential relief from removal might be given under

section 245(a) of the Immigration and Nationality Act (INA) if Lopez adjusted his

status. *See* 8 U.S.C. § 1255(a) (1997). By adjusting his status, Lopez would have

converted his deportation proceeding into an exclusion proceeding in which his

firearm-offense conviction would not bar admissibility, providing him eligibility

for relief. *See* 8 U.S.C. § 1182(a)(2) (1997).

To adjust his status, however, Lopez needed an "immediately available"

visa. *See* 8 U.S.C. § 1255(a) (1997). At the time, a visa was not immediately

available to a citizen in Lopez's preference category who had not yet applied for

2

one. *See* 8 C.F.R. § 245.1(g)(1) (1997). Lopez does not dispute this limited availability. Instead, he argues that a visa would have been immediately available to him during the deportation proceeding, if the IJ had only granted a continuance and either Lopez married his U.S.-citizen girlfriend or Lopez's parents successfully petitioned for their own citizenship. *See* 8 U.S.C. § 1151(b)(2)(A)(I) (1997) (exempting immediate relatives of U.S. citizens from numerical limits on visas).

We recently held that an IJ does not violate due process by not informing an alien of the possibility of an immediately available visa where the alien and the record do not make the IJ aware of the alien's engagement to a U.S. citizen or the possibility of the alien's parents later successfully petitioning for citizenship. *United States v. Moriel-Luna*, --- F.3d ----, No. 08-50124, 2009 WL 3461925, at *4 (9th Cir. October 29, 2009).

As we explained in *Moriel-Luna*,

[The petitioner] did not make the IJ aware of the engagement with his girlfriend or of the possibility that one of his parents might become a citizen. The IJ was required to inform the alien of his or her *apparent* eligibility to apply for [relief]. Yet until the alien himself or some other person puts information before the judge that makes such eligibility apparent, this duty does not come into play. We do not require IJs to speculate about the possibility of anticipated changes of circumstances and advise aliens of facts not suggested in the record.

*Id.* at *4 (internal citations and punctuation omitted).

3

Here, the facts are similar and *Moriel-Luna* is controlling in defeating Lopez's claim. Lopez did not inform the IJ of his plans to marry a U.S. citizen or of his parents' alleged eligibility to apply for citizenship. When asked about his marital status, Lopez told the IJ, "I'm single." When asked about his parents' immigration status, Lopez told the IJ only that his parents were permanent residents. Lopez made no other comments that should have led the IJ to inquire further into a speculative engagement or possible parental citizenship,[1] and neither option was apparent to the IJ. The IJ did not err by not informing Lopez of the possibility of relief from deportation via adjustment of status, and the district court did not err by denying Lopez's motion to dismiss the 8 U.S.C. § 1326 indictment.[2]

**AFFIRMED**.

---

[1]Lopez argues that the IJ compounded the due-process error by not acting adequately on Lopez's request for counsel. Yet at each proceeding, the IJ told Lopez of his right to counsel and Lopez repeatedly and explicitly asserted his desire to speak for himself. The IJ also gave Lopez a list of local legal-services organizations. When Lopez later said that he wanted to speak to an attorney about an appeal, the IJ continued the hearing to a later date. At the later hearing, Lopez reasserted his desire to speak for himself. The IJ did not deny Lopez his right to counsel.

[2]Because we conclude that the IJ did not err by not informing Lopez of the possibility of relief via adjustment of status, we need not decide whether Lopez demonstrated sufficient equities to warrant discretionary relief.

4